## PROCTOR ELECTRIC CO. v. McGRAW ELECTRIC CO.

### No. 1159.

District Court, D. Delaware.

April 22, 1938.

Charles H. Howson and Dexter N. Shaw (of Howson & Howson) both of Philadelphia, Pa., and Charles F. Richards, (of Richards, Layton & Finger) of Wilmington, Del., for plaintiff.

Arthur G. Logan, (of Marvel, Morford, Ward & Logan) of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is a patent infringement suit. Proctor Electric Company of Philadelphia, a manufacturer of electric cooking utensils, charges McGraw Electric Company of Minneapolis, a manufacturer of like utensils, with infringement of letters patent, No. 1,540,628, issued June 2, 1925, to Fred-

erick E. Hurxthal and Alpheus O. Hurxthal, and No. 1,907,199 issued May 2, 1933, to Alpheus O. Hurxthal. The claims relied upon by plaintiff are claims 1, 2, and 3 of the first patent and all six claims of the second patent. The defenses are invalidity and noninfringement.

Toasting bread or cooking waffles requires two conditions—heat and time. Bread is subjected to the radiant heat of an electric toaster—some 300° or 400° F.—until it is toasted throughout. At the same time the expansion element of a thermostat is located against the bread so that both bread and expansion element respond to the heat together. When they both reach the predetermined degree of heat the thermostat causes a bell to ring or a light to be extinguished. Thus the toast controls the toasting. Stated differently the surface temperature of the toast is shared by the expansion element of the thermostat which in turn operates the signal.

The invention of the patented device is based upon the discovery that the surface temperature of toast of a certain color or texture after the bread has gone through the toasting cycle is fairly uniform. The application of this discovery through the utilization of a thermostat is the novel feature of the patented device. If the thermostat is set to operate at the temperature of the surface of the toast then that temperature defines the length and measure of the toasting. In the second patent the same principle is applied to a waffle iron.

### First Patent.

The title of this patent is "Automatic Temperature Control for Bread Toasters." The patentees state:

"The object of this invention is to provide means, such as a sensitive element, [a thermostat] for indicating automatically that an edible, such as bread, has been toasted, or seared, to a desired degree. * * *"

When the toasting has reached a predetermined temperature the thermostat operates a light or bell to signal that the toasting is complete. The patentees further state:

"We have discovered that the temperature of a slice of bread, when it is toasted correctly, is fairly definite."

The surface of untoasted bread is comparatively cool. When the bread is placed in the toaster and next the expansion element of the thermostat the expansion element assumes the temperature of the bread. Thereafter the temperature of the expansion element increases in proportion to the increase in temperature of the surface of the bread. When the surface of the bread has reached a certain degree of heat and has become toasted, the expansion element has expanded to such an extent as to cause the thermostat to operate the signal.

Claim 1 of the patent is illustrative:

"1. In a toasting device, a sensitive element located in such relation to the surface of the material to be toasted that it will be affected by the surface temperature of the material, and mechanism, actuated by the sensitive element, for indicating when the material is toasted."

The claim calls for a toasting device embodying a sensitive element, i. e., a thermostat, and an indicator, i. e., a light or bell combined to accomplish a particular result. The expansion element of the thermostat is to be located in such relation to the surface of the material to be toasted that it will be affected by the surface temperature of the material and will actuate the indicator to show when the material has been toasted to the desired degree. In other words, the surface temperature of the toast will actuate the expansion element of the thermostat which in turn will operate the signal when the temperature of the toast and expansion member have reached the predetermined degree of temperature.

### Prior Art.

The only reference cited by the Examiner in the Patent Office was a patent showing an automatic toaster controlled by a clock mechanism. Defendant's expert testified that he was familiar with toasters for 15 years and the only automatic toaster known to him worked on a clock principle. None operated with a thermostat. A clock was used to stop the toasting after the bread had been subjected to heat a predetermined length of time. There was no heat expansion element. There were no signals actuated by a thermostat which was responsive to the surface temperature of the material being toasted. Defendant relies upon patented devices operated with hot plates. These citations do not approach the subject matter of the claims in suit.

Defendant's suggestion that the patentees' application of a thermostat to a

toaster is simply an illustration of the use of a thermostat with an oven is unsound. Plaintiff's expert answering says: "I am in entire disagreement with that view. I have understood Mr. Biebel's treatment of the prior art patents to say in effect that if you want a toaster thermostat control all you have to do is to take any old thermostat and put it in any old place in the toaster, and you have a perfectly regulated toaster. In my opinion that is exactly what Hurxthal did not do. He did not take any thermostat and put it in at any place. He took a sensitive thermostat and he put it in the toaster in such relation to the surface of the toast that the toast dominated the action of the thermostat." Plaintiff's expert demonstrated his opinion by an experiment. He took plaintiff's toaster and preheated it. He then took a piece of bread and cut a hole in it where the thermostat would normally be so that the thermostat could look through the window, so to speak, in the bread. The thermostat was not then so located that it was dominated by the toast. The toasting was a failure. "It proves, as I see it" said the expert "absolutely conclusively that the essential thing is the location of the thermostat in the toaster so that its temperature is dominated by the slice of bread."

The first patent is a generic patent and discloses an operative and useful device. The invention has gone into successful commercial use. Large numbers of the patented device have been manufactured and sold by plaintiff. Licenses have been granted and accepted by leading manufacturers of such devices. Similar considerations apply to the second patent.

## Second Patent.

The title of this patent is "Cooking Utensil." The principles involved are similar to those involved in the first patent. This invention relates to a waffle iron in place of a toaster. The patentee says:

"I have discovered that in a waffle or similar cooking utensil having a relatively thin cooking plate of high heat conductivity, the temperature of the cooking plate varies in such relation to the surface temperature of batter that it has a definite value corresponding to a definite value of said surface temperature, and therefore the cooking plate temperature may be used to control actuating means for a signal, heat controlling means, or both, so that, in effect, the actuating means is controlled by the surface temperature of the material being cooked. The present invention contemplates the provision of actuating means as above mentioned, in such relation with the cooking plate so as to be controlled by the temperature of the plate."

Claim 5 of the patent is typical:

"5. In a waffle iron or similar cooking utensil, a pair of superposed cooking plates formed to provide a shallow chamber therebetween for the reception of batter, means for heating said plates to raise the temperature of said batter to surface cook or sear the same, the thin body of batter within said chamber being properly cooked to a given degree and surface color when its surface temperature reaches a definite value, means for indicating when said batter has been cooked to said given degree and color, and means controlled by expansion and contraction of one of said plates for actuating said indicating means in accordance with the temperature of the plate, said plate having such characteristics that the contact of raw batter with a surface thereof exercises an immediate effect through said plate on said actuating means, and the temperature of said plate varies in such relation to the surface temperature of the batter that it has a definite value corresponding to said definite value of said surface temperature."

The relation between the two patents in suit is clear. In the second patent, as in the first, the surface temperature of the batter is utilized to dominate or control the expansion element of the thermostat which actuates a signal for indicating when the batter is cooked to the desired degree. In the second patent the cooking plate functions as the expansion element to actuate the signal and thus indicate when the waffle has been cooked to the desired degree. Hurxthal was the first in the art to provide a device for cooking a waffle in which the temperature of the cooking plate is used to actuate a signal indicating that the cooking of the waffle is completed. The thin aluminum plate of the waffle iron is so controlled by the surface temperature of the batter, both at the time of pouring and thereafter continuously until the cooking of the waffle is completed, that the temperature of the cooking plate can be used as a measure of the surface temperature of the waffle and also utilized for the actuation of the signal to indicate when the cooking is completed. Nothing in the prior art involved this conception.

### Infringement.

Defendant's structure reads upon the claims of both patents. In the waffle iron of defendant the lower grid is used as the expansion element of a thermostat precisely as the expansion wire of the first patent. The temperature of this grid is controlled by the surface temperature of the batter. The grid and batter are so intimately associated that the temperature of the batter is shared by the grid. The expansion of the grid may be used to measure the surface temperature of the waffle and to actuate the signal when the surface temperature reaches the predetermined degree of heat. The waffle iron operates precisely as the toaster of the first patent. When the preheating has been carried to a point determined by the setting that has been given to the regulating knob the light will go out, indicating that the temperature is such that pouring the batter is in order. When the batter is poured the conductivity of the batter for heat is so much greater than the emission of heat by the heating element that the temperature of the lower grid is immediately lowered and the light goes on. The temperature of the batter and grid in a few seconds comes together. The temperature of the grid is the surface temperature of the waffle. The same sort of action takes place as the batter cooks. It gives off moisture and steam. The conductivity lessens so that the rate of abstraction of heat by the batter from the grid grows smaller and smaller. Thereafter the temperature rises. When the surface temperature of the waffle has reached the temperature for which the knob is set, the switch operates and gives the signal. The waffle is cooked.

The principle of operation disclosed in the patents in suit and in defendant's waffle iron is the same. The processes are alike. Each consists in raising the temperature of the material being toasted or cooked from room temperature to a point when the process is complete. Both processes depend upon the heat conductivity of the material cooking. Both are completed when the surface temperature reaches a definite degree. In each the surface temperature of the material affects directly the operation of the thermostat. Each comprises heating elements and thermostats arranged to control a signal to indicate the termination of the operation.

The claims in suit of both patents are good and valid in law. The waffle iron manufactured and sold by defendant embodies the inventions of plaintiff's patents. Defendant has infringed those patents. Plaintiff is entitled to an injunction and accounting.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½, 28 U.S.C.A. following section 723.

A decree may be submitted.